UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>CHARLES LEE SCHMIDT,<br><br>    Defendant. | Case No. 4:19-cr-00371-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are numerous motions filed by Defendant Charles Lee Schmidt. As will be explained, these motions fall into two categories: 1) requests for a corrected sentence, and 2) requests for compassionate release.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES all Motions.

## II. BACKGROUND

On November 26, 2019, a federal grand jury returned a three-count indictment against Schmidt: Count I – Possession with Intent to Distribute Cocaine, under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count II – Possession with Intent to Distribute

Methamphetamine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and Count III – Possession with Intent to Distribute a Lysergic Acid Diethylamide (LSD) under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Dkt. 1. On October 13, 2020, Schmidt entered a plea of guilty to Count one of the Indictment. Dkt. 39.

On March 8, 2021, the Court sentenced Schmidt to 58 months imprisonment. Dkts. 49–51. The Court noted that its 58-month sentence would run "concurrently with the defendants' terms of imprisonment" in two Idaho state cases and that he should be "credited with all time served in federal custody." Dkt. 51, at 2. Schmidt is currently incarcerated at the Federal Correctional Institution in Sheridan Oregon ("FCI Sheridan") and has a projected release date of April 21, 2025.

On May 20, 2022, Schmidt filed a Motion for Credit for Time Served. Dkt. 53. Therein, Schmidt argues the Bureau of Prisons ("BOP") is not giving him credit in accordance with the Court's judgment. *Id.* at 1.

On May 27, 2022, Schmidt filed a Motion for Sentence Reduction. Dkt. 54. In this document, Schmidt again contends he is not being given "pre-sentence confinement credit as per court order." *Id*. at 1. He also claims the Court should reduce his sentence in light of COVID-19 hardships he faces. *Id*.

On June 22, 2022, Schmidt filed another Motion to Reduce Sentence. Dkt. 55. In this Motion, Schmidt reiterates that the Court "verbally expressed it's intention to have the imposed term of imprisonment run concurrently to any term of imprisonment imposed" in his state cases and that he be "credited for all the time spent in federal custody." *Id.* at 1. He then laments that, "despite the Court's clear intentions," BOP is still not giving him all

credit he is due. *Id*. at 1. Schmidt also attaches copies of various requests to BOP staff regarding this issue as well as an unsigned single-paragraph document purportedly from someone within BOP indicating that his computation is correct. Dkt. 55-1, at 3.

On July 6, 2022, the Government responded to the collective "credit for time" motions indicating it did not oppose Schmidt's request because it appeared "the Bureau of Prisons is unable to comply with the Courts order" and agreeing he should be given credit for all "time spent in federal custody." Dkt. 56, at 2.

On September 22, 2022, Schmidt filed a Motion for Sentence Reduction. Dkt. 57. This motion is more akin to a motion for compassionate release because Schmidt details his own health concerns (as they relate to COVID-19), as well as his aging parents and their health concerns, and asks for an early release. *Id*. at 5. Schmidt also requests that the Court appoint him Counsel to aid in his efforts. *Id*. at 6.

The Court subsequently granted the Government an extension of time to respond to Schmidt's Motion at Dkt. 57. Dkts. 58–59.

On October 14, 2022, Schmidt filed a Motion entitled "Motion for Expedited Consideration and Disposition of Petitioner's Motion for Sentence Credit and to Redesignate Detention Housing Center to the Oxford Detention Center." Dkt. 60. As the title suggests, Schmidt asks the Court to swiftly resolve the credit for time issue and to redesignate him to a facility in Wisconsin which is closer to his family and will allow him the opportunity to participate in the RDAP program. *See generally id.*

The Government responded in opposition to Schmidt's Motion for Compassionate Release. Dkt. 61. Schmidt did not reply.

MEMORANDUM DECISION AND ORDER - 3

### III. ANALYSYS

The Court will begin by addressing the credit for time issue contained in Dkts. 53, 54, 55, and 60. It will then address Schmidt's motion for compassionate release contained in Dkt. 57, and referenced in Dkts. 54, at 60.

### A. CREDIT FOR TIME

Generally speaking, Schmidt is correct in his summary of what the Court ordered at sentencing. The Court ordered that this sentence would run concurrent with any Idaho state sentences and the Court ordered that he be given credit for all time *in federal custody*. Herein lies the first problem with Schmidt's request. He is already receiving credit for all time *in federal custody*. The Court has contacted United States Probation and Parole as well as the BOP's Sentence Computation Team and can confirm he is not missing any time.

Schmidt was arrested (by Idaho state agents) on July 31, 2019, and on August 1, 2019, his state parole was revoked (in Case Nos. CR2007-11012 and CR-2016-12577). He continued to serve his parole violations until he was paroled to exclusive federal custody on July 19, 2021. Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), and Title 18 U.S.C. § 3585(b), preclude the application of credit for time that has been credited against another sentence. Also, Program Statement 5880.28, Sentence Computation manual (CCCA of 1984), and the provisions of Title 18 U.S.C. § 3585(a), explain that the earliest possible date a sentence can commence is the date on which it is imposed. Accordingly, Schmidt's federal sentence began on March 10, 2021 – the date it was imposed. He then received "concurrent" credit from that point until July 19, 2021, when he was paroled to exclusive federal custody. In short, BOP has not failed to abide by

the Court's order. It is correctly calculating his time and given him credit for all time *in federal custody*.

Far more important, however, is that Schmidt is overlooking a critical fact. The Court already gave him credit for the time he now seeks specifically because of the reason he now articulates. Because he was not in federal custody while sitting in Idaho state jail for approximately 19 months, he would not—in fact, could not, as outlined above—receive any credit towards this sentence. But the Court took care of this disparity at sentencing.

As the Court clearly stated during sentencing,[1] it took 19 months "off the top" of Schmidt's sentence so that he would not lose the time he was "serving" on the underlying criminal conduct in state custody simply because he was not in federal custody. Thus, Schmidt already received credit for this time. The Court will not reduce or credit him any further as such would amount to double counting.

In sum, Schmidt's various motions on this topic are DENIED because he has already received credit for the time he argues was forgotten.

B. **COMPASSIONATE RELEASE**

As noted, Schmidt's motion for compassionate release focuses on his own personal health challenges, as well as the fact that he has aging parents and his father purportedly

---

[1] The transcript was never ordered in this case and is, therefore, not part of the public record. In addition, the statement of reasons (which reflects this reduction) is sealed and only visible to the Court and Counsel. Nevertheless, the Court has reviewed the sentencing transcript and confirmed with United States Probation and Parole on this matter. It can represent that it had a discussion during the hearing with Schmidt's attorney and Counsel for the government in which all agreed BOP would likely not give Schmidt credit for any time in state custody and all agreed the Court could avoid that outcome by simply subtracting those months from its sentence—which it did.

has cancer.

1. LEGAL STANDARD

Schmidt seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[2] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

2. DISCUSSION

   a. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the

---

[2] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Schmidt submitted a request for Compassionate Release with the Warden on July 13, 2022. Dkt. 57-5. As of September 16, 2022, Schmidt had not received any response to his request. Based upon the lack of response within the prescribed timeframe, the Court finds Schmidt has exhausted his administrative remedies and may petition the court.

 b. Extraordinary and Compelling Reasons

Having determined that Schmidt has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Schmidt bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in

combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, Schmidt's motion lays out two circumstances he believes fall under the specific scenarios set out in U.S.S.G. § 1B1.13 in this case: (1) a compelling reason based on his health, (2) a compelling reason based his parents ailing health. Dkt. 57, at 5.

First, Schmidt cites his various health challenges—including Type II diabetes, obesity, hypertension, congestive heart failure, arthritis, adeana [sic], dental issues, and

various mental health problems (such as PTSD, bipolar disorder, anxiety, and depression)—as placing him at a higher risk for complications should he contract COVID-19. Arguably, these circumstances could qualify as an extraordinary and compelling circumstance necessitating compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[4] Dkt. 36, at 2.

As an initial matter, the Court notes that Schmidt's medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19.[5] That said, Schmidt's risk of serious illness or death from COVID-19 is relatively low because of the efforts of

---

[4] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[5] *CDC Updates, People with Certain Medical Conditions,* (Updated Dec. 6, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

MEMORANDUM DECISION AND ORDER - 9

the BOP and its modified operations plan.⁶ Indeed, it was because of the BOP's operation plan that Schmidt was fully vaccinated as of April 15, 2022, against COVID-19. Dkt. 57-4, at 12. *United States v. Kim*, 2021 U.S. Dist. LEXIS 86830, at *6–7 (D. Haw. May 6, 2021) (denying the defendant's motion because he was fully vaccinated, and there were no active COVID-19 cases at the facility where he was located). "Fully vaccinated people have a significantly reduced risk of COVID-19 infection . . . and those who do get infected 'are at a substantially reduced risk of severe illness and death from COVID-19 compared with unvaccinated people.'" *United States v. Austin*, 2021 WL 3669318 (D. Idaho Aug. 18, 2021) (quoting CDC guidance). The Government argues, and the Court agrees, that Schmidt's vaccination status weighs heavily against a finding of extraordinary and compelling circumstances.⁷

Additionally, there is no evidence to suggest that Schmidt's would be at lower risk to contract COVID-19 if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the

---

⁶ *Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 19, 2023).

⁷ To some degree Schmidt argues the COVID-19 pandemic (in general) justifies his release. However, concern for the possibility of exposure to COVID-19 on its own does not meet the extraordinary and compelling criteria. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

MEMORANDUM DECISION AND ORDER - 10

virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"). Indeed, as of January 20, 2023, FCI Sheridan is reporting zero active cases among inmates and four active cases among staff.[8] Schmidt has requested release to live with family in Wisconsin. As of January 20, 2023, the state of Wisconsin has averaged over 500 new cases for the past seven days, and has had over 14,000 confirmed deaths (since the pandemic began). The risk of contracting the virus is not lower in the community in which he seeks to live.

Second, Schmidt argues his Motion should be granted so he can assist his 70-year-old mother in caring for his father who recently learned he has bone cancer. This type of situation would arguably fall under subsection (C) of the guidelines—family circumstances. Dkt. 57, at 5. Family circumstances that would amount to extraordinary and compelling reasons for early release are listed in the FSA as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C). Because Schmidt does not move for compassionate release based on the incapacitation of his spouse, the Court need not address whether he would be the "only available caregiver."

---

[8] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed January 20, 2023).

Furthermore, courts have considered compassionate release for the reason of caring for a parent or grandparent, but have found such circumstances do not amount to "extraordinary and compelling" reasons. *See United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019) (finding that "[m]any, if not all inmates, have aging and sick parents," and as such, it is not a compelling reason for release.). Thus, while the Court understands Schmidt's concerns for his family, such is insufficient to warrant early release.

Lastly, the Government argues that the 18 U.S.C. § 3553(a) factors weigh against Schmidt's release.[9] Dkt. 61, at 11. The Court agrees.

While Schmidt was not convicted of a violent offense, he was involved in the distribution of cocaine, methamphetamine, and LSD in the community. Critically, Schmidt committed the instance offense only one month after having been released from Idaho state custody. Schmidt has failed to demonstrate how early release in this case reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for

---

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

Furthermore, courts have considered compassionate release for the reason of caring for a parent or grandparent, but have found such circumstances do not amount to "extraordinary and compelling" reasons. *See United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019) (finding that "[m]any, if not all inmates, have aging and sick parents," and as such, it is not a compelling reason for release.). Thus, while the Court understands Schmidt's concerns for his family, such is insufficient to warrant early release.

Lastly, the Government argues that the 18 U.S.C. § 3553(a) factors weigh against Schmidt's release.[9] Dkt. 61, at 11. The Court agrees.

While Schmidt was not convicted of a violent offense, he was involved in the distribution of cocaine, methamphetamine, and LSD in the community. Critically, Schmidt committed the instance offense only one month after having been released from Idaho state custody. Schmidt has failed to demonstrate how early release in this case reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for

---

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

the offense when he has served less than half of his sentence.

In sum, the Court finds that Schmidt has exhausted his administrative remedies. That said, he has failed to substantively demonstrate an "extraordinary and compelling reason" for his release and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Schmidt at this time. Accordingly, the Court must DENY Schmidt's motion for Compassionate release.

Finally, with respect to Schmidt's passing reference regarding the appointment of counsel, the Court notes there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings (including requests for compassionate release) rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). In this case, the Court has reviewed the materials and does not find any circumstances warranting the appointment of Counsel. Accordingly, the Court DENIES this request as well.

## IV. CONCLUSION

Schmidt already received credit directly off the top of his sentence for the time he was in state custody that is the subject of his current requests. The Court will not reduce his sentence further.

Additionally, while Schmidt's personal health concerns might place him at a higher risk for complications stemming from COVID-19, he is fully vaccinated and would not be

at a decreased risk were he out in the community. Second, while the Court understands the desire to care for ill or aging parents, such is not a statutory reason warranting a reduction in sentence.

## V. ORDER

The Court HEREBY ORDERS:

1. Schmidt's Motions for Credit / Reduction (Dkts. 53, 54, 60) are DENIED.
2. Schmidt's Motions for Compassionate Release (Dkts. 55, 57) are DENIED.

DATED: January 30, 2023

David C. Nye
Chief U.S. District Court Judge